# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ZAFRA LERMAN, Ph.D., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) No. 10-CV-2169 |
|     v. | ) |
| | ) Judge Joan H. Lefkow |
| ALLEN M. TURNER, WARRICK L. | ) |
| CARTER, Ph.D., STEVEN KAPELKE, | ) |
| Ph.D., ANNICE KELLY, and COLUMBIA | ) |
| COLLEGE CHICAGO, | ) |
| | ) |
|     **Defendants.** | ) |

## OPINION AND ORDER

Plaintiff, Zafra Lerman, Ph.D., filed an eight-count complaint against Columbia College of Chicago ("Columbia"), Allen M. Turner, Warrick L. Carter, Ph.D., Steven Kapelke, Ph.D., and Annice Kelly, alleging, among other things, gender, religious, and national origin discrimination, retaliatory discharge, defamation, breach of contract, and invasion of privacy.[1] Count VIII of Lerman's complaint alleges a civil conspiracy among Turner, Carter, Kapelke, and Kelly (collectively, "defendants") to damage Lerman's reputation and frustrate her attempt to appeal her termination from Columbia. Before the court is defendants' motion to dismiss Count VIII pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion [# 16] is granted.

## BACKGROUND[2]

---

[1] The court has jurisdiction over Lerman's federal claims under 42 U.S.C. § 1981, 42 U.S.C. § 2000e-5(f)(3), and 28 U.S.C. § 1331 and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367.

[2] The facts are taken from both the complaint and attached documents and are presumed to be true for the purpose of resolving the pending motion.

## I. Events Leading Up to Lerman's Termination

Lerman, an Israeli-born Jewish female, was employed as a full-time tenured faculty member at Columbia until her employment was terminated on October 5, 2009. Compl. ¶¶ 11, 13. At all relevant times, she met or exceeded Columbia's employment expectations. *Id.* ¶ 12. In fact, she had received a very positive performance evaluation on April 29, 2009. *Id.* ¶ 17.

In May 2009, Lerman attended an event hosted by the Chicago chapter of the American-Arab Anti-Discrimination Committee ("ADC"). *Id.* ¶ 15. At this event, Columbia was criticized for discriminating against Arab Americans, particularly for terminating a Palestinian faculty member for making an anti-Jewish remark. *Id.* Lerman reported this to Kapelke, Columbia's Senior Vice President and Provost, and made clear that she also objected to the manner in which the termination had been handled. *Id.* ¶ 16. Kapelke became angry and told Lerman not to discuss the issue with others. *Id.*

In July 2009, Kapelke ordered a Columbia Human Resource Department ("HR") investigation into Lerman's competency. *Id.* ¶ 18. For this investigation, Kapelke identified as a resource only faculty members that he understood to be personally antagonistic to Lerman. *Id.* Furthermore, Kapelke did not inform Lerman of the investigation. *Id.* Consequently, when HR interviewed Lerman on August 25, 2009, Lerman incorrectly believed that the interview pertained to an internal complaint she had previously filed against Ken Ilio, a member of her staff, for failure to perform his job duties. *Id.* ¶ 19.

After this interview, Kapelke ordered a second HR investigation of Lerman instead of addressing her complaint about Ilio. *Id.* ¶ 20. The second HR investigation concerned grant fund payments that Lerman had authorized to be made to Ilio and others in 2007 after

2

consultation with Kapelke and Michael DeSalle, Columbia's Vice President of Finance. *Id.* ¶¶ 20-21. Kapelke did not inform Lerman of this investigation either. *Id.* ¶ 20.

On September 22, 2009, upon realizing that Columbia would not address her complaint against Ilio, and believing that Kapelke had enlisted Carter (Columbia's President), Kelly (Columbia's Vice President and General Counsel), Turner (Chairman of Columbia's Board of Directors), and HR in a scheme to protect Ilio's employment, Lerman notified Columbia that she planned to report Ilio's improper job performance to the relevant government agencies herself. *Id.* ¶¶ 21-23. Kapelke is said to have encouraged Turner's involvement in the HR investigation even though, as a non-academic, Turner was prohibited from involvement in tenured faculty members' disciplinary matters. *Id.* ¶ 21.

On October 5, 2009, Lerman filed a Verified Charge of Discrimination and Retaliation against Columbia, and served a copy of the charge on Kelly. *Id.* ¶ 24. Upon receiving a copy of the charge, Kelly and Kapelke, acting on behalf of Columbia, terminated Lerman's employment, purportedly for misappropriating grant funds. *Id.* ¶¶ 25, 46. Lerman was stripped of her tenure rights, lost her salary and accumulated benefits, and was ordered not to return on campus. *Id.* ¶ 25.

## II. Lerman's Inquiry into the Termination

Columbia's Statement of Policy on Academic Freedom, Faculty Status, Tenure, and Due Process (the "Policies") secures faculty members' tenure rights. *Id.* ¶ 26. The Policies prohibited Columbia from terminating Lerman's tenure without providing her an opportunity to appeal the termination to the Elected Representatives of the College ("ERC"). *Id.* ¶¶ 28-29. According to the Policies, if the decision is appealed, Columbia must provide ERC with

3

evidence through written and oral statements of witnesses to support its decision. *Id.* ¶ 29. ERC has the authority to determine whether dismissal has been based on prejudicial mistakes of fact or prejudicial deviations from appropriate procedures. *Id.* ¶ 30. On October 19, 2009, Lerman notified Columbia that she was appealing her termination to ERC and requesting a full inquiry. *Id.* ¶ 31.

Turner, Carter, Kapelke, and Kelly conspired to use their influence over Columbia to frustrate Lerman's appeal by preventing ERC from accessing vital witnesses and information. *Id.* ¶¶ 35, 105. Specifically, they prevented ERC from interviewing DeSalle, who would have exculpated Lerman from any claim of wrongdoing, and from confronting Kapelke with his own knowledge that Lerman had acted just as he and DeSalle had advised her to. *Id.* ¶ 35. The purpose behind this conspiracy was to protect Ilio by preventing Lerman from reporting his activities to the government and to protect Columbia by preventing Lerman from exposing Columbia's misuse of grants and funding. *Id.* ¶ 106.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of the claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed.

4

2d 868 (2009); *see also Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

Lerman alleges that Carter, Turner, Kapelke, and Kelly conspired against her to use their influence over Columbia to deny her a meaningful appeal with ERC and to damage her reputation. Compl. ¶ 105. She contends that defendants acted for their own benefit so as to avoid an ERC inquiry into the reasons for Lerman's termination and to avoid exposing Columbia's misuse of outside grants and funding. *Id.* ¶ 106. Defendants argue that the intracorporate conspiracy doctrine bars this claim.

To properly allege a state law claim for civil conspiracy, a plaintiff must plead a "combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner* v. *Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571, 182 Ill. 2d 12, 230 Ill. Dec. 596 (1998); *Adcock* v. *Brakegate*, 645 N.E.2d 888, 894, 164 Ill. 2d 54, 206 Ill. Dec. 636 (1995). "The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner*, 694 N.E.2d at 571. A cause of action for civil conspiracy exists even if only one of the parties commits an act in furtherance of the agreement. *Adcock*, 645 N.E.2d at 894. The intracorporate conspiracy doctrine provides that, because the acts of an agent are considered in law to be the acts of the principal, an agent acting in an official capacity for the principal cannot be liable for

conspiring with the principal. *Buckner*, 694 N.E.2d at 571; *see also Whitely* v. *Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 897 (N.D. Ill. 2009).

Here, defendants were all agents of Columbia at the relevant times and are accused of conspiring with one another to harm Lerman. Compl. ¶¶ 4-7, 105. Lerman argues that the intracorporate conspiracy doctrine does not apply because she has not alleged that defendants conspired with Columbia, the principal, but rather among themselves. Illinois courts, however, have recognized that this omission does not bar the application of the doctrine, holding that agents of a corporation may be incapable of forming a conspiracy among themselves even if the complaint does not explicitly name the principal as a party. *See Whitely*, 607 F. Supp. 2d at 897 ("Under Illinois' intracorporate conspiracy doctrine . . . there can be no civil conspiracy between a corporation's own officers or employees . . . ."); *Georgeson* v. *DuPage Surgical Consultants, Ltd.*, No. 05 C 1653, 2005 WL 1799281, at *3 (N.D. Ill. July 26, 2005) (intracorporate conspiracy doctrine prevented an Illinois state law claim of civil conspiracy between two doctors who were officers of a surgical consulting company); *Van Winkle* v. *Owens-Corning Fiberglass Corp.*, 683 N.E.2d 985, 991, 291 Ill. App. 3d 165, 225 Ill. Dec. 482 (1997) ("[A] civil conspiracy cannot exist between a corporation's own officers or employees."). Accordingly, the fact that Lerman did not name Columbia as a defendant in her civil conspiracy claim does not preclude the intracorporate conspiracy doctrine from applying.

As a limited exception to the doctrine, agents are not barred from conspiring with one another when their interests diverge from the interests of the principal and they are acting beyond the scope of their authority or for their own benefit at the time of the conspiracy. *Bilut* v. *Nw. Univ.*, 692 N.E.2d 1327, 1332-33, 296 Ill. App. 3d 42, 230 Ill. Dec. 161 (1998); *see also Zic*

v. *The Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 997 (N.D. Ill. 2001). Illinois courts have looked to federal civil rights and antitrust cases to define the self-interest exception to the intracorporate conspiracy doctrine. *See, e.g.*, *Bilut*, 692 N.E.2d at 1332-33 (citing *Pink Supply Corp.* v. *Hiebert, Inc.*, 788 F.2d 1313 (8th Cir. 1986)). These cases generally construe the self-interest exception to require "at least an economic stake in the gain to be realized" from the conspiracy. *Pink*, 788 F.2d at 1318. The plaintiff must be able to allege more than mere conclusional statements that the defendants acted for their own benefit. *Id.* at 1318 ("Our decisions have required more than mere speculation regarding the benefit to an agent to be realized from participation in a conspiracy with the principal."); *Saleymeh* v. *Interqual, Inc.*, 508 N.E.2d 1155, 1158, 155 Ill. App. 3d 1040, 108 Ill. Dec. 578 (1987) (self-interest exception did not apply to defendant hospital employees because "there were no facts (as opposed to unsupported conclusions regarding defendants' motives) alleged from which to infer that the acts done by the various defendants as agents of the hospital corporation were done for any reason other than the reasons of the hospital corporation"). Additionally, the complaint must allege more than that the defendants acted out of a desire to harm the plaintiff; the defendants must plausibly have wanted to help themselves. *Zic*, 130 F. Supp. 2d at 997.

Lerman argues that this exception applies, as she has alleged that defendants acted for their own benefit by seeking to rid themselves of Lerman's willingness to expose both Ilio's activities and Columbia's misuse of grant funds, and that the elimination of this threat posed by Lerman was of "substantial importance" to defendants. Compl. ¶ 106. This is not enough, however, to support a claim that defendants acted out of a desire to protect themselves rather than Columbia. The allegation that they acted for their own benefit actually focuses on a benefit

7

for Columbia, not the individuals involved.  Nothing is alleged that would establish an independent personal motive.  Outside of the effect that exposure would have on defendants by virtue of their being officers of Columbia, the allegations are insufficient to show that defendants were acting to help themselves.  *See Saleymeh*, 508 N.E.2d at 1158.

The fact that defendants may have acted to prevent exposure of misconduct at Columbia does not matter – what matters is that this would ostensibly be in line with the principal's interests.  *See Doe* v. *Bd. of Educ. of Hononegah Cmty. High Sch. Dist. No. 207*, 833 F. Supp. 1366, 1382 (N.D. Ill. 1993) (application of the intracorporate conspiracy doctrine is not precluded by suggesting that because the defendants acted wrongfully they acted outside their official corporate capacities).  Otherwise, the intracorporate conspiracy doctrine "would quickly become a meaningless concept."  *Id.*  Thus, despite Lerman's attempt to plead around the intracorporate conspiracy doctrine, the court finds that it applies to bar Lerman's claim.

**CONCLUSION AND ORDER**

For the foregoing reasons, defendants' motion to dismiss Count VIII [# 16] is granted. Lerman's civil conspiracy claim (Count VIII) is dismissed.


Dated: November 5, 2010              Enter:_____
                                            JOAN HUMPHREY LEFKOW
                                            United States District Judge