# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2169 | **DATE** | 4/23/2012 |
| **CASE TITLE** |  | Lerman vs. Turner | |

**DOCKET ENTRY TEXT**

Defendants' motion for leave to file counterclaims and amended affirmative defenses [#107] is granted. Plaintiff to answer or otherwise plead to defendants' counterclaims by May 7, 2012. Parties to file a revised scheduling order by May 7, 2012. In court date of 4/24/2012 is vacated and parties need not appear.

■[ For further details see text below.]    Notices mailed by Judicial staff.

## STATEMENT

On April 8, 2010, plaintiff Dr. Zafra Lerman filed an eight count complaint[1] against her former employer, Columbia College of Chicago, and various Columbia officials (collectively "defendants") alleging that she was discriminated against based on her gender, religion and/or national origin (Jewish) and terminated in violation of Columbia's policies and in retaliation for complaining about the treatment of a female colleague. On March 13, 2012, defendants moved for leave to amend their answer to add a twelfth affirmative defense based on after acquired evidence. They also moved for leave to file four counterclaims against plaintiff, including breach of fiduciary duty (Count I), fraud (Counts II & III), and conversion (Count IV). (Dkt. #107.) Fact discovery concluded on April 12, 2012. (Dkt. #111.)

Defendants state that through the course of the present litigation, they learned that plaintiff authorized a number of grant payments to a corporation named MIMSAD, Inc., of which plaintiff was the president and sole employee, for work that plaintiff was already being compensated for as a salaried Columbia employee. Defendants allege that plaintiff breached her fiduciary duty to Columbia by failing to disclose her interest in MIMSAD and committed fraud and conversion by funneling $156,000 to the corporation between 2004 and 2009 while receiving a salary from Columbia. Defendants seek to amend their answer and file their counterclaims pursuant to Federal Rules of Civil Procedure 13(b) and 15(a).

**Legal Standard**[2]

Rule 13 governs counterclaims and requires counterclaims to be stated at the time an answer is served. Fed. R. Civ. P. 13(a). Under Rule 13(b), "[a] pleading may state as a counterclaim against an opposing party any claim that is not compulsory." Fed. R. Civ. P. 13(b). Rule 13(e) allows the court to "permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." Fed. R. Civ. P. 13(e); *see* 27A Tracy Bateman Farrell et al., *Federal Procedure, Lawyers*

**STATEMENT**

*Edition* § 62:209 (updated March 2012) ("A defendant's motion to amend its answer to assert counterclaims against plaintiff is governed by Fed. R. Civ. P. 13(e) where defendant claims that it was not aware of the facts giving rise to the counterclaims at the time the original answer was served."). After a responsive pleading has been served, Rule 15(a) allows a party to amend its pleading only with leave of court, although the "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In considering a motion to amend, the court "need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile," *Bethany Pharmacal Co., Inc.* v. *QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) (citing *Foman* v. *Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)), and may consider the burden that granting leave to amend would place on the judicial system as a whole. *Tamari* v. *Bache & Co. S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988). The decision to allow a party to amend its pleadings is within the sound discretion of the district court. *Zenith Radio Corp.* v. *Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 2d 77 (1971); *J.D. Marshall Intern. Inc.* v. *Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991).

**Undue Delay, Bad Faith, Dilatory Motive**

Plaintiff argues that the court should deny defendants' motion because Columbia knew about plaintiff's affiliation with MIMSAD and knew that plaintiff had been receiving payments from grant fund accounts through MIMSAD "for years" and "long before the commencement of this action." (Plf.'s Resp. at 2.) In support, plaintiff offers the affidavit of non-party witness Woodie White, Columbia's Vice President of the Office of Institutional Advancement, who states that certain senior administrators, including defendant Columbia President Warrick Carter, knew that plaintiff was affiliated with MIMSAD, and that MIMSAD regularly received payments from grants that plaintiff procured. (White Aff. ¶¶ 5–9.) White states that plaintiff's affiliation with MIMSAD was "common knowledge among the senior administration officials" and that receipt of grant funds by a corporation established by the professor who is the principal investigator on a grant is a "typical occurrence" at major research institutions. (*Id.* ¶¶ 4, 5.)

Defendants counter that "none of the individual Defendants, nor any agent of Defendant Columbia who is responsible for the direction of this litigation, knew of the Plaintiff's affiliation with MIMSAD, Inc." until discovery progressed in this case. (Def.s' Mot. to Amend ¶ 12.) In support, defendants offer the affidavit of President Warrick who states that he first learned about plaintiff's affiliation with MIMSAD in November 2011. (Warrick Aff. ¶ 3.) "Immediately" upon discovering plaintiff's affiliation with MIMSAD, defendants state that they (1) issued a document subpoena to MIMSAD with a return date of November 14, 2011 and (2) noticed a Rule 30(b)(6) deposition of MIMSAD, which defendants took on March 2, 2012. (Def.s' Reply at 2–3.)

There is a genuine dispute between the parties as to when defendants were placed on notice of plaintiff's affiliation with MIMSAD. Although White claims that several administrators were on such notice, White left his position at Columbia in 2003, which was six years before plaintiff was terminated and one year before she allegedly began sanctioning improper payments to MIMSAD. (White Aff. ¶ 2.) It is unclear, therefore, whether the administrators White claims had notice in 2003 are the same administrators in charge of the present litigation. Defendants state that they did not discover plaintiff's affiliation with MIMSAD until after they conducted discovery on plaintiff's claims. Thus, unlike the plaintiff in *Morningware, Inc.* v. *Healthware Home Products, Inc.*, No. 09 C 4348, 2011 WL 5239226, at *2 (N.D. Ill. Nov. 1, 2011), who filed its motion to amend at the close of discovery and offered no reason for the delay, defendants have offered a reasonable explanation for their failure to seek leave to amend at an earlier date. The court therefore declines to find that defendants acted with an improper motive. Moreover, "[d]elay on its own is usually not reason enough for a court to deny a motion to amend," *Soltys* v. *Costello*, 520 F.3d 737, 743 (7th

**STATEMENT**

Cir. 2008), and in recent months, defendants have moved promptly to identify and investigate their claims. Finally, given that defendants' alleged non-discriminatory reason for terminating plaintiff related to a specific grant payment in 2007, and given that defendants' claims are based on similar allegedly improper payments, the court believes that judicial economy is best served by resolving all claims and defenses growing out of these payments in one proceeding rather than requiring defendants to file a separate lawsuit to resolve their claims.

**Undue Prejudice**

Plaintiff argues that she will be unduly prejudiced if defendants are allowed to amend their pleadings because defendants' amended defense and counterclaims relate to a number of different grant payments made between 2004 and 2009 and plaintiff has been unable to obtain documents related to these grants. Specifically, plaintiff states that she did not retain copies of the documents at issue and defendants have stated that they do not possess them. (Plf.'s Response at 3.) Plaintiff does not, however, argue that the absence of these documents voids defendants' claims, thereby making amendment futile. Defendants also note that the parties might be able to obtain relevant documents directly from the agencies that issued the grants. Although defendants' motion to amend comes at the close of fact discovery, "[a] court will generally grant leave to amend, even if discovery is substantially completed, if the discovery has adequately covered the subject matter of the amendment." *McCann* v. *Frank B. Hall & Co., Inc.*, 109 F.R.D. 363, 367 (N.D. Ill. 1986) (citation omitted). Given that (1) defendants have deposed MIMSAD's corporate representative, (2) MIMSAD has responded to a subpoena *duces tecum*, and (3) the parties have exchanged written discovery related to the payments at issue, defendants represent that "any additional discovery . . . should be relatively minimal." (Def.s' Reply at 4.) A brief discovery extension, therefore, should be sufficient to allow both parties to investigate defendants' claims. *Compare Matter of Forseth*, 24 B.R. 443, 446 (E.D. Wis. 1982) (granting defendant leave to amend affirmative defenses where plaintiff was able to conduct additional discovery and there was no suggestion that additional discovery would be protracted or unduly burdensome); *with McCarthy* v. *PaineWebber, Inc.*, 127 F.R.D. 130, 134 (N.D. Ill. 1989) (denying leave to amend where motion was filed after discovery closed and final pre-trial order had been entered and additional discovery was required) (collecting cases).

Rule 15 reflects a liberal attitude towards the amendment of pleadings. Here, defendants have offered a reasonable explanation for their delay and plaintiff will not be unduly prejudiced if defendants are permitted to assert their counterclaims and affirmative defense. Defendants' motion (Dkt. #107) is therefore granted. Plaintiff is directed to answer or otherwise plead to defendants' counterclaims by May 7, 2012. Magistrate Judge Brown will continue to supervise discovery in this case. (*See* Dkt. #28.) The parties are directed to file a revised scheduling order by May 7, 2012.

---

1. Count VIII (civil conspiracy) was later dismissed. (Dkt. #47.) The remaining counts are as follows: unlawful violation of civil rights under § 1981 (Count I); unlawful discrimination based on gender, religion and/or national origin under Title VII (Count II); unlawful retaliation (Count III); breach of contract (Count IV); common law retaliatory discharge (Count V); defamation (Count VI); and false light, invasion of privacy (Count VII).

2. The court has original jurisdiction over plaintiff's claims based on federal question and supplemental jurisdiction. *See* Compl. ¶ 8; 28 U.S.C. § 1331 & § 1367. The court can exercise supplemental jurisdiction over defendants' state law counterclaims under § 1367(a) if it concludes that defendants' claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see Adams Street Joint Venture* v. *Harte*, 231 F. Supp. 2d 759, 762 (N.D. Ill. 2002) (Section 1367(a)

"'permits district courts to maintain supplemental jurisdiction over counterclaims, whether compulsory or permissive, so long as the counterclaims are 'so related to' the original claims.'") (quoting *Rothman* v. *Emory Univ.*, 123 F.3d 446, 454 (7th Cir. 1997)). To meet the demands of section 1367(a), defendants must demonstrate a "loose factual connection between the claims." *Ammerman* v. *Sween*, 54 F.3d 423, 424 (7th Cir. 1995). Defendants have made such a showing here because their claims are related to allegedly improper grant payments authorized by plaintiff, and defendants' non-discriminatory reason for terminating plaintiff is based on one of these alleged payments. Thus, both defendants' and plaintiff's claims will require the court to examine the nature and permissibility of one or more of these payments.